Good morning, call 207-550, People of the State of Illinois v. Daniel Garcia-Cordova, on behalf of Mr. Cordova, Mr. Levi Harris, on behalf of the people, Mr. Edward Seneca. Good morning, counsel. Mr. Harris. May it please the Court, in 2009, this Court may well remember that it found that Daniel Garcia-Cordova's Confrontation Clause rights were not violated when the complaining witness in that case failed to give any accusatory testimony against him. Largely, the opinion was based on the fact that the witness did not refuse to answer questions but merely testified about some of the things that she was asked that she could not remember. This Court also held that any error was harmless. Since then, the Supreme Court has vacated and remained it for reconsideration in light of its opinion in People v. Kitch. Kitch cited this Court's opinion in People v. Learned with approval. That case held that a witness must offer some accusatory testimony before hearsay statements can be brought in from that witness. Counsel, let me ask you a threshold question. What is your conclusion as to what Kitch stands for? What is the rule of law that was announced in Kitch? What's the holding in Kitch? Well, Your Honor, it's not exactly clear. Kitch does two things, which we point out in our brief. One is that it looks at the defendant's argument that is proffered in that case, which in that case it was a witness must offer testimony on every element of the defense in order to satisfy the Confrontation Clause. That was the appellant's argument. Right. And it did not dismiss that but merely said in this case, you know, so what, there was testimony on every element of the defense. Precisely. So the defense argued that the victim had to establish or provide enough testimony or detail to establish each and every element of every count. Supreme Court looks at the evidence and says that was met in this case. Are you reading Kitch to hold that a victim is available for cross-examination only when the victim's testimony establishes every element of every count? Is that what you believe the holding in Kitch is? No, Your Honor. And as a matter of fact, that goes beyond what we had argued here and what we believe that, you know, the sister panel found in Learn. So are you saying that Learn is the rule? Because you seem unsure, certainly in your reply brief, the comments you make, even if Learn, Mr. Garcia-Cordova, and I'm quoting at page 8, should win, reverse, or remand, even if Learn is the standard for this case, but if Kitch is the standard, then Learn is the standard. But then it's abundantly clear that the admission violated Crawford. I mean, how are we to know which is the standard? Well, Your Honor, the standard that we had urged initially in appearing before you in 2009, the standard that we're here arguing today for would be the standard that was in Learn that the Kitch court cited approvingly but then distinguished. However, under the standard that the defendant did proffer in Kitch and that the Kitch court certainly didn't say, well, that's not the standard, that's crazy, it's the Learn standard. If that is the standard, there's no question in our minds that that would not suffice here. But Learn and Kitch are not memory loss cases. This is a memory loss case, is it not, counsel? Your Honor, that is correct. However, respectfully, I think that's a distinction without a difference. I mean, the substantive effect of both of those instances is no accusatory testimony is provided, whether it's the witness sits on the stand and says, well, I don't know or I can't remember or I'm not telling you that they crossed their arms or whatever. The substance of it is no accusation comes out of that witness and is put into dispute for – to be challenged, okay, to be confronted. But if the court, if the Supreme Court was going to overrule Flores and Sutton, wouldn't it have told us more specifically and distinctly that that's what it was doing? And how could it overrule the United States Supreme Court in Fenster and Owens? Well, Your Honor, I believe that there are distinctions between the Flores case, which this court relied on initially, the Fenster case, the Owens case, and this case. What are they? Well, if you will, the distinction is that in those cases – first of all, I believe in Fenster and in Owens you had accusatory testimony. Certainly in Fenster you had this guy saying that this – it was a rape case and the expert testified this hair is pulled out and I know it was pulled out. I can't remember why I think that, but I know for a fact this hair was pulled out. So that was an issue where there was accusatory testimony that would have satisfied, say, Learn, but he just couldn't remember what the basis for that was. In Owens you had a man who – he remembered that he had identified the defendant in the past as his attacker, but couldn't remember – I don't know why I think that. I can't remember the incident, but I do remember, yes, I did identify this person. I would argue that that's accusatory testimony. In Flores the guy gets up there and basically just dummies up, and this happens all the time in gang cases among others, which I think gave this court some legitimate pause and concern the first time. But the difference is in that case the guy gets up and says, I don't remember the incident. I don't remember talking to the police. And they go through and they ask him about the statement. Do you remember going in about this certain date, talking to this assistant state's attorney or whatever? Do you remember giving this statement? In this case, you know, they ask, do you remember anything happened to you on the couch or bed? No. Okay. Do you remember talking to this lady? Yes. Well, what did you talk about? I don't remember. It wasn't, you know – do you remember, C.R., talking to this nice lady? Do you remember telling her that your dad did bad things to you? Do you remember telling her that your stepdad put his thing in your mouth or whatever? So the prior statement can supply the accusatory testimony? Well, certainly, Your Honor. It seems like kind of circular reasoning that if we're going around and around between the prior statement to establish accusatory testimony. Well, here's what I think about it. If there's an accusatory statement, that should be in the inquiry. Okay? If a person gets up, for instance, I don't know, it wasn't cited in this case, but in People v. Major Fliss, which I think came out of the First District, the only testimony there was that, you know, this defendant made me sit on his hand. That was the only accusation. That would suffice. Okay? That's the end. That's all you've got to do if you get that. If you don't have an accusatory statement from the stand, that witness should at least be confronted with the statement that they made before, as Crawford would seem to say, and have to defend or explain that prior statement. And the explanation may be line by line. I don't know. I don't remember. I don't remember, as it is indeed in these gang cases. But at least, step by step, they're confronted with that prior statement. The statement is out there, and it's not putting, you know, defense counsel in the position of having to stand up there and elicit this, because it's already been elicited by the state. They've already made the statement public. They've given the witness an opportunity to speak to it. Then at that point, even if they say, no, I didn't make that, or no, I don't know, a defense attorney could then get up and say, well, you've heard this statement. Are you telling the truth today that this is not, you know, you didn't say this, or you don't remember this, or whatever? Counsel, what line of cases stands for that proposition if that is constitutionally required? Well, Your Honor, I don't think there's any line of cases yet. This is obviously a frontier of the law. But it would seem to be a rule that would harmonize what we have out of this court in Learn and the other cases of, you know, the Fenster, the Owens, Flores that the court cited before. Well, Kitsch is the latest Supreme Court announcement on the issue, but you seem to be suggesting that Kitsch adapted the holding in Learn. Where are you getting that in the Kitsch case? I don't see that here. Well, I don't think that the Kitsch court ever said that it was adopting the holding in Learn. What it did was it set forth the holding in Learn and said this case is different than that. Right, so it's distinguishable specifically from Kitsch. Right. So how do you extrapolate from that that they're somehow adopting the reasoning in Learn? Well, to a certain extent, this is looking at several pieces of circumstantial evidence and trying to put together what did the Supreme Court intend for this court to do on remand? What was the Supreme Court's intention? Parts of that evidence are, okay, you had a petition for leave to appeal in Learn from the state. That was denied. Okay, Learn was not vacated for reconsideration in light of Kitsch. PLA was denied in that case. The Supreme Court also had the opportunity, had it wanted to, to quote this court's opinion in People v. Garcia-Cordova in Kitsch. It didn't do so. It had the opportunity to say that's the standard or we think this argument is persuasive. Certainly the state cited People v. Bryan out of the Fourth District in that case. None of those cases seemed dispositive to the Supreme Court. What it did was it cited Learn, it cited the logic of Learn, distinguished it, certainly didn't say, well, we don't find the logic of Learn persuasive or we don't find that that's the law in the state of Illinois. And in doing that, then it went on to deny the petition for leave to appeal in Learn and grant it or not grant it but deny it and vacate for reconsideration in this case and then the cases coming next on the docket, both of which came out the opposite way from Learn. So from that, I mean, I'm divining here a little bit that the intention was that at least we believe the logic of Learn is more persuasive than the logic of say Garcia-Cordova. So in a memory loss case where the witness legitimately freezes on the witness stand or has a memory loss, what is supposed to happen in those cases? Well, Your Honor, as I was sort of trying to get at before, maybe I wasn't very articulate, but, you know, if there's no accusation from the stand, then what needs to happen? If there's a prior statement, it's the same thing that happens time after time after time and again in adult cases where that witness, whether they have a legitimate memory loss or whether they are just, you know, they're afraid of what's going to happen to them on the stand or whatever. The state gets up there and takes that statement. Did you on such and such date go to the grand jury? Did you on such and such date talk to the citizen state's attorney, yes or no? And did you on such and such date, were you asked this question and did you give this answer? They read it into the record. The witness may say yes. The witness may say no. But at that point, the witness has been confronted with that statement. What if the witness says I don't remember? They've still been confronted with the statement. And that is the defense or explanation requirement. You're supposed to be doing the confrontation. You're indicating is the state supposed to be doing the confrontation or is it the right of the defendant to confront the witness? Why would the state have to be doing that? Well, it's the state's burden. The state has the burden of proof to, you know, to prove guilt beyond a reasonable doubt. So that would be, I mean, ordinarily that's the state's burden to bring in prior statements, to bring in whatever it feels it has to do. If the state doesn't do that, they risk losing the case. But who's right? You almost seem to be metamorphosing this requirement into the state has to provide the confrontation of the witness. Is that the law or is it the defendant who has the right of confrontation? I believe that the defendant has to be provided the opportunity and a meaningful opportunity for cross-examination. And are you saying that that's the only way that the defense can decide whether or not to cross-examine with that litany from the state? I'm saying, Your Honor, that that is the only way that the defendant has a legitimate opportunity to cross-examine that does not conflict with his or her duties to, you know. To cross-examine or to conduct effective cross-examination? Because it seems to me in reading your brief, you're arguing for effective cross-examination, which is not what the U.S. Supreme Court says the defendant has the right to. Right. That's certainly not the case. And I'm trying to think of this in a practical way. I'm trying to think of what this cross-examination would look like if you have no accusatory testimony from, in this case, a little girl. What does counsel do? Does counsel get up and say, isn't it true? Now, you said you didn't remember. Isn't it true that you told this nice lady that your dad put his thing in your mouth? Okay. Now, isn't it true that that's not true? I mean, that would be extraordinary and certainly no case that I've ever seen that the defense attorney gets up when somebody has not remembered something. And in a case where that's – let's say there hasn't been a prior statement. In a case where there's no prior statement, then if that witness makes no accusation, you're golden. You sit down. The state can't prove its case. In this case, you know very well that somebody else is going to get up and testify for 25 or 30 minutes in great detail about what this child supposedly said. And that child's credibility is the one that's going to put your client in prison. That client's – that witness's credibility is the one that is at issue. So if she makes no accusation, how can you ever get at that child's credibility unless they're at least confronted with that statement? Well, let's get back to the holding in Crawford. Supreme Court in Crawford – and remember, up until Crawford, you had the Ohio v. Roberts, the, you know, firmly rooted exceptions. There wasn't a specific requirement that the witness be on the stand at all. So the Supreme Court says no. Confrontation means the right to confront the witness. They held in Crawford, quote, the declarant appears for cross-examination at trial. The Confrontation Clause places no constraints at all on the use of the prior testimonial statements. The initial holding was appears for cross-examination. Takes the witness stand under oath. Isn't that what happened? Did the witness appear for cross-examination? Well, Your Honor, that's the question. I mean, Crawford did not define what it means to appear for cross-examination purposes. There's also language there that says, and I believe it's in a footnote, that the witness must be present to defend or explain that prior statement. And that's what we believe didn't happen here. The witness was present. The witness was present, but the witness – Didn't explain or defend, but the witness was present to explain or defend, correct? The witness was present but was never – was never asked to defend or explain the statements.  The witness was never confronted. I mean, I guess that's the – And is that why defense counsel here elected not to cross-examine this witness? Well, I think it certainly – I think it certainly is the reason that defense counsel didn't accuse. I mean, defense counsel – So, well, that's a matter of trial strategy then, wasn't it? And if so, how can you then say if the defense elects not to cross-examine that – how can a witness then be unavailable for cross-examination? If there's no even attempt to cross-examine. And in our case, again, we did have certain things that this young witness did say. I mean, she admitted to making the drawings. She remembered talking to Christina Kruschevitz. She just didn't talk about the details. She didn't remember the details, et cetera. Well, okay. Let me – let me try and address each of these in turn. First of all, the reason that defense counsel did not cross-examine this witness was because he believed that, you know, the confrontation clause had not been satisfied, that basically – He wasn't heard by the testimony, so he doesn't want to step into a minefield. I think we are sensitive to that issue. As a matter of strategy, if a witness gets on the witness stand, freezes and doesn't provide compelling testimony against your client, you probably don't want to wade into that minefield. However, is that a problem for the court? Is that a problem for the law? If you have the right to do something and you choose not to for strategic reasons, why is that a problem for the prosecution? Well, Your Honor, I believe it's a problem for the Constitution. Again, in this case, I don't think it was simply a matter of, well, I'm not going to cross-examine this witness because there was no accusatory – or because there was no testimony that could put my client in prison, so this is very good. It was, I'm not going to question this witness because the state hasn't done what it needs to do, and then they renewed their earlier motion to keep out before Khrushchev was testified, or at least after she testified and they wanted to have it stricken. You know, it wasn't just a situation where, again, if you don't have a prior statement, somebody gets up who's the complaining witness, they dummy up, they have a memory loss, they don't provide the testimony they need to do, that's great. You know, I mean, we might as well sit down, we're all going home, and there's going to be no conviction. In this case, all that did was exacerbate the problem that defense counsel had because he knew very well what Khrushchev was going to testify to, and he knew that without that defense witness, without the complaining witness offering any accusatory testimony or at least being forced to defend or explain her prior statements, there was going to be no way to get through Khrushchev to get to that witness's credibility. But she could have been forced to explain or defend those statements if she were cross-examined by defense counsel regarding those. You're putting the onus on the state. You know, the Supreme Court in Owens said that ordinarily a witness is available and subject to cross-examination if the witness is on the stand, under oath, and responds willingly to questions. We had that here, did we not? The witness was on the stand, under oath, and never didn't respond. I mean, there was some shaking of the head and things like that, but there was never any indication that the witness shut down or simply refused to answer a question, correct? No. But again, Your Honor, I don't believe that. That's correct. That's correct. So Learn adds this layer to the Confrontation Clause analysis of presenting accusatory testimony, and did that come out of whole cloth? Was that just, you know, where did that come out of in Learn? Where do you see the genesis of that in Learn? Well, I mean, I think Learn locates it in the requirement in Crawford that a witness be present not only just on the stand, you know, a lifeless lump of flesh up there, but that they be present to defend or explain those out-of-court statements, which I don't believe happened here. And again, in Learn, first of all, the State never said that this issue was forfeited by saying, well, you know, defense counsel didn't even make an attempt. So, you know, I believe this Court found in its initial ruling that the State had waived the opportunity to make that argument. But second of all, you know, in Learn, counsel did get up, counsel did ask some questions, and, you know, then the witness is crying or whatever, and you sit down. And in that case, that was not sufficient. So I don't know, I don't believe that there's a meaningful distinction between, okay, counsel gets up and asks some questions and they cry, versus counsel says, you know, there's been no confrontation here, there's been no accusation, I'm not going to cross his hand. I don't think the substantive, the substance that came out of that was any different. The reality was in both cases there was no accusation, there was no confrontation. How do we establish a rule that quantifies or qualifies what is a sufficient amount of detail, what is a sufficient amount of accusatory testimony? I mean, how do you quantify that rule? A bright line ruling would be, as the Supreme Court initially indicated, U.S. and Crawford, the witness is on the stand under oath available. Now we want to start prescribing the precise nature of testimony. Doesn't that become a little difficult to enforce in a cold? Your Honor, I don't believe that it does. Again, if there's an accusation, I don't think we're here at all. If this witness had said, you know, my dad touched me or my dad, you know, did something bad to me, okay, that's an accusation. Or if you have, as it was again in Major Flisk, all the kid said was this defendant made me sit on his hand when the accusation was that there was some contact between the finger of the defendant and the anus of the witness. That suffices. That's accusatory testimony. If you don't have that, then all you have to do is what you do in every adult case, in every case certainly with gang members or something like that, is you take the statement, you go through, and you give that witness the opportunity to defend or explain that. So does the accusation have to be in each and every element of every count? Or is it just a general? The first part I talked about where there's going to be some accusatory testimony, I think some accusatory testimony is some accusatory testimony. So you're not advancing the position of the appellant in Kitchener, are you? No, Your Honor, we're not. Our position consistently, I think even from trial, I mean the whole reason that the trial was thrown into such disarray is because Learn came down right then and changed things. So our position all along has been the position that Learn took, which is that there needs to be some accusatory testimony, not necessarily every element of the offense, but some accusation, something that a defense attorney can then get up and assail or exploit. Well, you're citing Learn as standing for the opinion of the 2nd District. This case was also published. In this case, it's not consistent with the holding of Learn, is it? No, Your Honor, but there again, this panel's decision in Garcia-Cordova was vacated when Learn was not, or at least it was vacated in the light of Rolandez. She came out the same way with a tacked-on harmless error analysis, plus a significant portion that disparaged this court's analysis in Garcia-Cordova. And the court didn't grant a petition for leave to appeal to the state, didn't vacate it, denied the petition for leave to appeal, left that intact, and not only that, but cited a pretty good chunk of it in its opinion in Kitch. So, I mean, right now, before, we were in the position of Learn had been vacated in light of Rolandez-G when we were here. So Learn had no force. In this situation, Garcia-Cordova currently does not exist. And Learn does and has been cited with approval by the Supreme Court. The Supreme Court has cautioned us not to read too much into their supervisory orders when they're not directing us to do something. They very easily could have directed us to reverse this case in light of Kitch and Learn, but they directed us to reconsider in light of Kitch, correct? That is correct. Okay, you'll have an opportunity for rebuttal. Thank you, Your Honor. All right, Mr. Panzeca. Okay, please, the Court. Good morning, Your Honors. My name is Edward Panzeca. Sorry, I mispronounced your name. On behalf of the people of this matter, that's quite all right. It's a difficult one. Before I forget, I just want to mention very briefly, counsel didn't touch on it before, but the alternative holding proffered by this Court in its opinion on harmless error is completely untouched by Kitch. So should this Court be inclined to revisit the Crawford issue based on Learn or Kitch or any permutation thereof, the harmless error analysis is untouched by Kitch. I'd like to just begin very quickly by recounting the purpose of Section 115.10. It's a quote from the Supreme Court in People v. Holloway, 177.01 at page 9. Section 115.10 was originally passed in response to the difficulty in convicting persons accused of sexually assaulting young children. This difficulty occurs because children's testimony in sexual assault cases is often inadequate Problems in proof may resolve when the lesser developed cognitive and language skills that children have hinder them in adequately communicating the details of an assault. The legislature sought to create a hearsay exception to allow into evidence corroborative testimony that the child complained to another person about the incident. Some people might say that another panel of this Court lost sight of the purpose of 115.10 when it issued its learned opinion. I would say that it did violence to us. This isn't a 115.10 case. This is a Confrontation Clause case. Exactly. So Learn doesn't apply. So even though we would submit Learn as bad law, it doesn't apply. This is a Confrontation Clause case, and as Justice Enoff, you recounted, there's a long line of Confrontation Clause cases that say if the witness testifies he or she doesn't remember on cross-examination, that that's the end of the show, that he or she is available. Was Kitch a Confrontation Clause case or a 115.10 case? I believe it was a Confrontation Clause case. And they cited Learn on this proposition of what is necessary for a witness to be available, correct? That's true. Kitch absolutely did no favors to anyone with regard to Learn, this Court or litigants, in giving us any direction on what to do with Learn. In fact, it held specifically how Learn was distinguishable from the facts of that case. It did. It did for whatever that's worth. But the defendant's position is actually somehow by talking about Learn, Kitch overruled itself through Kitch, the Supreme Court overruled itself in Flores, rejected the holdings of Owens and Fenster and the long line of appellate court cases that hold. Availability is satisfied if the witness takes a stand and answers questions. So it would be your position the witness doesn't need to accuse the defendant. The witness does not have to provide a specific level of testimony. Is it your position that as long as the witness is on the stand available for cross-examination, if the witness totally freezes, that would satisfy the Confrontation Clause? No. I think Rolandus G. would speak to that issue. But that's not what happened here. Can you answer the question, what is the bottom line rule of if a witness gets on the stand, totally freezes, doesn't say anything, or professes a total memory loss, what would be the result under those circumstances? Well, for purposes of 115.10, here's the statement. Setting aside 115.10, I'm talking about a Confrontation Clause issue. Does that satisfy the Confrontation Clause? Yes, it does. Okay. Definitely does. Well, that would have to be your position, wouldn't it? Yeah, it definitely does. And why is that? Because of the long line of cases that say it is so. As long as the witness is up there taking the stand and responding to questions, they're available for cross-examination. So you're saying it turns on the right to confront as opposed to effective confrontation? That's what I'm saying, and that's what the case is saying, just as Zeenoth pointed out when she was speaking to Defense Counsel. Like I was saying, Kitch did us no favors with regard to learn, but Justice Hudson, you asked, is there a holding that we can discern from Kitch? Absolutely not. There was no analysis. There was no discussion of the standard. In order for the court to have done what the defendant wants it to have done in Kitch, the court would have had to overrule the long line of Supreme Court precedent of the United States Supreme Court precedent, its own precedent, and all the appellate court precedent, and we're supposed to surmise that it did it by implication in Kitch. I mean, the defendant's asking this court to blaze a trail that's already been well-trodden, and there's no reason to depart from it. That being said, I really don't have very much else to say unless the court has any further questions. What's your response to the argument that some accusatory testimony can be reached by a Q&A regarding the prior statement? I'm not buying into the defendant's argument in the first place, but even if I were, even if I did, I think it happened here. Again, we're talking about a very young child, and the assistant state's attorney attempted to elicit testimony from the victim regarding the charged conduct. The child responded, I don't know. Then she went to the pictures, the pictures which depicted the charged comment. Do you remember drawing this picture? No. Do you remember drawing this picture? No. And each one of those pictures depicted an act charged in the indictment. So, I mean, it's not as if the assistant state's attorney asked one question, do you remember speaking to Ms. Krushwitz, and the victim responded, I don't remember, and left it at that. There were several follow-up questions, and the child quite simply didn't remember. And to the extent that the defendant's advocating we treat a child, a 6-year-old child, like we would treat an adult witness on the witness stand, I think that, too, flies in the face of 11510. I mean, we're cognizant of the fact that children have difficulty remembering. They have difficulty communicating their ideas. I mean, that's what happened here. That's why we have these rules. If the analysis is some accusatory testimony, if that becomes the test, that's the test for kids. That's the test for everybody. I don't think we can have a test under the Confrontation Clause for children, witnesses, and then a different test for adults. Right. If this Court were to buy into this argument, I agree. I completely agree. It would be the test for everyone until this statute was changed. Defense counsel indicated that he didn't think there was much difference between the victim and learned breaking down and crying, and the fact that the victim in this case really had memory loss because, effectively, there was nothing to cross-examine. And doesn't the fact that there really isn't anything to cross-examine affect the right of a defendant for cross-examination? We're not even talking about effective cross-examination, but now I'm asking about the right. Right. I tried to speak to that previously, Justice Zinoff, and maybe I misspoke. No, but this is, I mean, you've touched on it, but I think this is important. It is because the long line of cases I'm talking about talk about memory loss. They talk about when a witness says, I don't remember. The witness in Owens didn't remember being beaten by the defendant. He said he didn't remember, and so the defense counsel has something to cross-examine about. As opposed to a witness crying or, as in Rolandis, refusing.  Is that right? Exactly. That is a different situation, but it's not a situation presented by this case. So, you know, like I said, the Supreme Court didn't do us any favors talking about learning the way it did in Kitch without really saying what it was doing. And, I mean, people's position would be that Kitch simply doesn't apply. It has no relevance to the outcome of this case. Is there any other questions? Thank you very much. Thank you. Mr. Harris. Your Honor, just briefly a few things. First of all, our position is not that the Kitch court somehow obliquely overruled Flores, Finster, and Owens, and that's why we tried to explain that, that we think those are still good law and that those can be harmonized with the analysis and learned. I believe that if you go back and look at the cases that have operated with this analysis so far, that this business of whether there's some accusatory testimony or whether at least that defendant was confronted with the prior statements and asked, do you remember this, or did you say this, whatever, in every one of those cases, with the exception, I believe, of this case, in Illinois at least, the ones that have been cited in the brief, those cases would have come out the same way had that been the standard. I mean, that would have been clear. It would have been sort of a bright line that Justice Hudson was talking about that would have made sense in every one of those cases. And also argue that the state's attorney in this case did, in fact, confront the witness with the prior statement. Well, Your Honor, I don't believe that that is true for a couple reasons. First of all, these pictures, I mean, we talk about pictures, but we're not talking about photographs. And, Your Honors, I believe you have the record. I mean, they're crayon drawings of a child. And divorced from any explanatory testimony or some kind of context, they don't have any meaning. It's not a situation where you've got a court-reported statement where that statement is perfectly clear. Everybody knows what's going on in that. I mean, these are sort of abstract things, and I'm not trying to be judgmental. I mean, it's a child. But, you know, I don't believe that those, you know, even if you say, well, I made this drawing. Well, what is that drawing? If you can't explain what the drawing is, I don't think it's very helpful. But also our position would be that until she had been asked about more than just do you remember anything happening on a bed or a couch. I mean, seven years, anything happening on a bed or a couch is a pretty vague question. She shouldn't have even been asked about the statements until she had been asked in more sufficiency about the, you know, the allegations themselves. I think, Your Honor, you made a good point that there's not more than one test for a confrontation clause analysis. There's great language from Justice Scalia, I think, in one of the confrontation clause cases, that we don't have one confrontation clause in that case for domestic abuse victims and then one for everybody else. I mean, it's the same clause across the board. And specifically, again, to this business of refusal versus, say, breaking down and standing in tears or just saying I don't know. I don't think that a defendant's Sixth Amendment rights should turn on the locutions and the verbiage that a kid says, whether it's I don't remember or I'm not telling you or I'm sad, for a couple reasons. One, the substance is the same, that there's no accusation and there's no there's been no confrontation with that prior statement, those prior testimonial statements. But number two, and I'm not suggesting that state's attorneys here or anywhere are venal, but there would be no there would be no incentive for state's attorneys to get witnesses to do anything other than get out there, state your name, rank and serial number. And then if that is your all you want to do is that, sit down, you know, then it's up to the defendant to get up and do something with that. I don't believe that's a very effective way to safeguard a defendant's Sixth Amendment rights. Lastly, I'm happy to speak to the harmless error. I realize we didn't get into that in the in the opening argument, but I believe that we're in a different position now than we were in June of 2009, where in that case we were talking about a hypothetical error. This court found no error. In this case, if the court finds error, then I believe it's the harmless error analysis should be performed anew. That this man is sitting for a significant portion of his life in prison. And at that point, if the court finds error, that conviction resulted from from a trial that was riddled with error. I believe that the central harmless error analysis, you go all the way back to Chapman, is whether the state has proven, beyond a reasonable doubt, that the erroneous evidence did not contribute to this verdict that came out of this jury. All these other tests that we have are just tools to get at that basic question. We don't have different tests for harmless error. Your argument based on LEARN, I mean, it can be argued that it actually turns the confrontation right around. That the state must first confront the alleged victim with the statements that were made, or confront the alleged victim with facts concerning the offense. And really, the confrontation clause, that right is the defendant's right of confrontation. But this LEARN analysis and the way you read it, or the way you're responding to us, seems to indicate that it turns it around that the state actually has to confront the witness first, and then that opens the door to confrontation by the state. Your Honor, I believe that what needs to happen is that there needs to be a meaningful opportunity. And I don't believe that that opportunity presents itself unless, I mean, you've got an opportunity, but what is it worth? If what you have to do is get up there and ask all of the damning questions that never came out. You've got to be both the state and then turn around and put on your defense hat and try to eviscerate those things. So I'm not arguing that the state has to get up and do the defendant's dirty work for them. But conversely, I'm not comfortable, and I don't think the Constitution is comfortable, with something that says that, again, all the state has to do is put that witness up there, ask them a few preliminary questions, and then that witness sits down. Well, okay, he's appeared. Now let's trot out the six witnesses who've heard his six prior statements and put those all on me. But is that really what we're talking about here? It isn't like the state puts a witness on the stand, asks them, as you suggest, name, rank, and serial number, and then sits down. In this case and others, there's questions. If, in fact, there's legitimate memory loss or there's legitimate freezing of the witness on the stand, that's a little different than simply putting a witness up, asking them some preliminary questions, and sitting down with them. Well, respectfully, Your Honor, I believe that if this Court's opinion in Garcia-Cordova the first time around were the law, I don't think anything more would be required than name, rank, and serial number. The witness gets up there, answers every question put to them, which is what's your name, what's your rank, what's your serial number. But how do you fall under even the memory loss doctrine then? The state couldn't even argue memory loss because the state didn't even question it. So I think that example is a little extreme, isn't it? Your Honor, I mean, I believe that it is extreme. It's an attempt at reductio ad absurdum, and I would say that that is the path we would be trying down if Garcia-Cordova as it was originally remained the law. Thank you, Your Honor. Thank you, counsel. At this time, the Court will take the matter under advisement and render a decision in due course.